UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| James F. Wrighten, | |
| *Plaintiff*, | |
| | |
| v. | Civil No. 3:07cv257 (JBA) |
| | |
| The City of New London Police Department, | |
| *Defendant*. | |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

In this case brought under 42 U.S.C. § 1983, *pro se* Plaintiff James Wrighten, an African-American man, alleges that police officers violated his Fourth Amendment rights by seizing him in his car without justification. Wrighten has not named the officers involved as defendants, but instead has sued the police department of the City of New London ("City"),[1] seeking to impose liability on the municipality according to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The City has moved for summary judgment on the grounds that there is no evidence from which a jury could conclude that Wrighten's constitutional rights were violated and that there is no basis on which to attribute any such violation to a custom or policy of the City. Because the Court concludes that the existence of material factual issues precludes entry of summary judgment as explained below, the City's motion is denied.

**I.      Factual Background**

The brief facts of the case, taken in the light most favorable to the Plaintiff, are as follows. On the evening of January 28, 2007, Wrighten was sitting in his car in the parking

---

[1] Plaintiff explained during a telephonic status conference held June 22, 2007 that he had dropped Kenneth Edwards, a police captain, as a defendant in the case.

lot outside a grocery store at Ocean and Bank Streets in New London, waiting for his wife to return from shopping. Wrighten noticed a young black or Hispanic male crossing Spring Street and two police vehicles nearby. When Wrighten tried to back out of his parking space after his wife left the store, one of the police cruisers pulled in behind his car to block his departure. The officers stopped Wrighten, demanded his driver's license, and ran a computer search to determine whether he had any outstanding violations. Although one of the officers assured Wrighten that he was not being accused of any wrongdoing, the stop lasted about seven minutes. In the meanwhile, many more cruisers and officers arrived. Plaintiff felt intimidated and threatened by the police detention of him.

Wrighten alleges that the officers' actions were motivated by his race rather than any reasonable suspicion that he was breaking the law, and that the unjustified stop violated his Fourth Amendment rights.[2] He also alleges that the officers' actions are part of a common practice in New London, as evidenced by the police department policy of not documenting investigative stops which do not lead to arrests.

## II. Standard

Summary judgment is appropriate where the record after discovery "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if it could lead "a

---

[2] The precise constitutional basis of Wrighten's claims is not perfectly clear from his second amended complaint. In its brief, the City also mentioned Wrighten's possible claims alleging selective prosecution, false imprisonment, and violating equal protection. But throughout his opposition papers, Wrighten emphasizes that he is basing his claims on the Fourth Amendment, and so the Court will construe his complaint accordingly.

2

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant "need not prove a negative," but "need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The non-moving party, in order to defeat summary judgment, must then come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. But if the record as a whole, viewed in the light most favorable to the non-moving party, "could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment should follow. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quotation marks omitted).

### III. Discussion

In light of this standard, the City is entitled to summary judgment if the record, viewed in the light most favorable to Wrighten, is insufficient to support the conclusion that (1) Wrighten's constitutional rights were violated, and (2) any such constitutional violation can be attributed to the City under *Monell*.

#### A. Lawfulness of the Investigatory Stop

The City argues that the officers were justified in briefly stopping Wrighten in his car because they were responding to a report of a suspicious person in the area. According to the City:

Given the presence of a suspicious individual in the parking lot, coupled with

3

> the fact that the area is known for illegal activity (even to the Plaintiff), it was objectively reasonable for police to conduct a brief investigatory stop of Plaintiff's vehicle for purposes of confirming or dispelling the suspicion that criminal activity was afoot. Accordingly, the stop was not unconstitutional as a matter of law.

(Def.'s Mem. [Doc. # 30] at 11–12.) Wrighten responds that he was doing nothing wrong or suspicious at the time and that the police "[h]ad no reasonable or articulable suspicion to approach or detain" him. (Pl.'s Mem. Opp'n [Doc. # 34] at 3.)

The reasonableness of a brief investigatory stop—such as the one conducted in this case—is measured by a "standard less than probable cause," but which still requires officers to have had a "'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). A "reasonable suspicion" is one which has an "objective justification" based on more than a mere "inchoate and unparticularized suspicion or hunch." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quotation marks omitted).

Even accepting the City's version of the facts, there is nothing in the record which indicates that the officers had any particular reason to suspect that Wrighten was engaged in any criminal activity. Indeed, the City's own explanation has nothing which links the report of criminal activity nearby to Wrighten specifically, nor provides even a minimal basis for suspecting him of wrongdoing. Rather, reasonable jurors could conclude based on the factual record that the police stopped the Plaintiff without reasonable suspicion and thereby violated his Fourth Amendment rights. Therefore, the Court must next determine whether there is a basis for attributing such a constitutional violation, if proven at trial, to the municipality.

B.    **Municipal Liability**

A constitutional violation brought pursuant to § 1983 may not be attributed to a municipality on the basis of respondeat superior, but the City may be held liable "if the conduct that caused the [alleged] unconstitutional deprivation was undertaken pursuant to a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers . . . or pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000) (citing *Monell*, 436 U.S. at 690–91). The Supreme Court explained what is required for this type of claim as follows:

> [I]n *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused the plaintiff's injury. Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

*Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403–404 (1997) (citations omitted).

The City's position in support of summary judgment is that Wrighten has failed to offer any evidence of a municipal policy or custom, contending that "[a]lthough he vaguely alleges that the City has a policy or custom of conducting illegal stops of persons of color, and not properly documenting those stops, he has failed to generate any credible evidence establishing these facts." (Def.'s Mem. at 6.) Wrighten argues that he has met his evidentiary burden based on his showing that the police department has a practice of not documenting any investigative stops which do not result in arrests. In support of this, he has

5

submitted a copy of the police dispatch log for parts of 2006 and 2007. These logs contain entries dated January 28, 2007 which indicate that officers were dispatched to look for a suspicious person near Spring and Bank Streets, arrived at the scene, and left approximately seven minutes later, with no report filed as a result. Similar entries—involving stops of suspicious persons or vehicles, but without any reports filed—appear throughout the dispatch logs. According to Wrighten's review of the logs, Officer Leslie Smith (who may have stopped the Plaintiff) engaged in such stops 183 times within a six-month period, all geographically focused "within a community [] predominantly inhabited by blacks, Hispanics, and poor whites," and not below Willets Avenue. (Pl.'s Mot. Opp'n [Doc. # 33] at 5; Pl.'s Aff. [Doc. # 37] at 4.) Plaintiff also references a statement by a clerk at the police records department confirming that a report would only be generated if "there [had] been an arrest [or] ticket" as a result of the stop. (2d Am. Compl. [Doc. # 26] ¶ 36.)

From this, Wrighten argues that a jury could find that the police department has a policy of not recording investigative stops, thereby condoning or overlooking potentially unconstitutional conduct, which makes it more likely that officers feel free to engage in unreasonable seizures without the oversight that would be possible only through documenting such incidents for later review. Thus, the argument goes, the existence of the policy led to the officers' encounter with Wrighten on January 28, 2007 which he claims violated his Fourth Amendment rights.

Wrighten's factual basis for this argument is hardly overwhelming. The City's assertions about his absence of evidence notwithstanding, and in light of the Second Circuit's guidance on construing *pro se* filings, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191–93 (2d Cir. 2008), this showing nevertheless suffices to create genuine issues

6

of material fact—that is, whether Wrighten was unconstitutionally seized and whether the City's record-keeping practices or policies caused this deprivation of right—which can only be resolved by a jury.

IV.  **Conclusion**

Accordingly, the City's motion for summary judgment [Doc. # 29] is denied.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 29th day of September, 2008.