3:07- 257 JBA

United States District Court

District of Connecticut

James F. Wrighten

Plaintiff-Pro-se

V.

New London Police Department

Plaintiff's response to defendant's motion in limine

    The plaintiff argues that the incident of 1957 has played a part in the shaping of who he is, and what he has become.

    The defendant is asking the court to preclude my giving of this testimony. I'm asking the court to allow it by the operation of F.R.E. Sec. 401 and Sec. 402. The evidence would not unfairly be prejudicial to the defendant as it relates to things that has shaped my view, and my interaction with the police and other people.

Rule 401 is silent as to what is relevant. Thus, the determination of relevance is not automatic or mechanical. Courts cannot employ a precise, technical and legalistic for relevance; instead, they must apply logical standards applicable to everyday life.

    Relevant evidence has probative value. If an item of evidence tends to prove a fact is that of consequence to the determination of the action it is relevant.

    Relevant evidence is evidence having any value in reason to prove ant matter provable in an action.

    The incident of 1957 and how it has affected my state of mind at that time must have some value as the defendant has moved to not have them heard.

The determination of whether a particular item of evidence relevant to a consequential fact is made on a case-by-case basis.

Rule 402 provides that all relevant evidence is admissible except to otherwise provided by the constitution of the United States.

In reading the deposition taken or administered to me on November 30, 2007 at 10:05a.m. (pg. 36 line 2-25) The attorney representing the city asked-

Q." What about psychological trauma in your past, have you had any psychological or psychiatric trauma in your past? Any event?"

A." You know at 15 years old my daddy was running for the State House of Representatives in South Carolina. On the morning after Thanksgiving , we woke up to find this huge cross burning in front of our house. Some person on the phone called back and said, " we're going to come back and kill you niggers." It has left an imprint on my mind, it caused a lot of cynicism and mistrust."

Q." Did you report the incident to the authorities."

A." I'm sure he did"

Q. "Okay, and what action was taken as a result."

> A. " They came, but they were—and I don't want to sound rude or disrespectful but they were just as white, I believe as the person who put the cross in front of the house. So there was a lot of suspicion about who's coming. It's like calling a fox to protect the hen house."
> On page 39 at line 15-25

Q. "And you never discovered who actually placed that cross on your property?"

A. "No, No."

Q. "What kind of treatment or counseling, if any, did you undertake as a result of that incident?"

A. "None"

Q. "And bringing us forward to the date of the event that you claim in this law suit, January 28, 2007, did you undergo any treatment or counseling in connection with that previous incident."

A. "I went to see, I believe we spoke about it, I saw doctor Guitar at work, the employee assistant program, and I was later sent to L&M."

Here you see how I am taken back to a major event in my life that has had a lasting impact on me.

It's my experience growing up with police officers over my sixty some odd years; growing up in the south and living in the north had direct bearings on my perception, knowledge and expectation of the police conduct I was about to and was experiencing.

Based on black's historical relationship here in the united states with the police you certainly could understand my fear for my life, my fear for my wife. Relevant evidence generally admissible.

I feared for my wife as she came out of the store. My state of mind in 1957 and my state of mind that night in the parking lot were extremely similar; a whole lot of "mistrust." Again, the attorney for the defendant opened the same wound of psychological trauma, the psychiatric trauma, as it related to the evening of January 28, 2007. If people with badges and guns, drawn for no apparent reason, all of a sudden surrounded you would you not feel traumatized?

From the eighth circuit In Duncan v. Wells, the court of appeals held that evidence was properly admitted under Rule 403 because the plaintiff opened door through direct testimony. I'm asserting that defendant's attorney opened the door through his line of questioning during the deposition taking .Not to prejudice the jury but to inform them of where I've been and how I arrived at this point. There could be nothing confusing about the relevance of the trauma then in 1057, and the trauma now except with more force. This one was committed "under color of law". These individuals misused their powers to cause harm.

United States v. Fisher 106 F, 3d.622, 633 (fifth circuit 1977).

There would be no unfair prejudice, again the attorney representing the city lead into this line of questioning. Again, I am asking the court to allow the written document from the deposition.

In United States v. Candelaria-Silvia 561 F.2d 613,618 (5th circuit. 1977)

Rule "protects" a defendant against unfair prejudice, against all prejudice. Virtually all evidence is prejudicial or is not material. Prejudice is also unfair if the evidence was designed to elicit a response from the jurors that is not justified by the evidence. Relevance is more a concept than a definition and its determination requires consideration of several factors.

United States v. Sheefieldv992 F. 22.1164-1168.

Evidence that others at a government base had used facilities to produce unauthorized retirement gift relevant because such evidence showed plaintiff state of mind and put charges against defendant. City of New London in context.

The trial judge has broad discretion.

Hamling v. United States 418 U.S. 78; 124-125   41 L.Ed.2d 590(1974)

From the Third Circuit.

Spain V. Gallegos 26F.3d 439, 452

Rule 401 gives judges great freedom to admit evidence but since evidence is irrelevant, only when it has no tendency to prove the facts that I had feared for my life, my wife's life when she came out of the store on the evening of January 28, 2007.

During my deposition with the defendant's attorney, we discussed in detail an event that my family and I had experienced when I was 15 years old. The KKK burned a cross in front of our family's home. The police were called, detectives came, and the newspapers came. As a teenager well aware of the racism during that time I felt, we felt, we were not safe, even when the police came.

I used a term during the deposition as to calling the foxes to protect the hen house and the fear.

McGonigal v. Gearhant Industries Incorporate 85- F.2d. 774,778 (fifth circuit1988) as in other evidentiary matters, trial courts are given broad discretion in determining relevance.

I want you to look at my state of mind at the time. Prior to that, I would add that I am, we are, products of our environment, we are the total of our experiences, good and bad. Based on our history with the police in black America, especially black men, there is a perception of the police that they can do whatever they please with us and there is no recourse.

Like the defendant's attorney is seeking to exclude the evidence I presented during deposition- a part of the record before the court. A part of my damages spoken about, written about. With the six police cruisers, their 15-19 police officers there and all because of a man walking in the street that had absolutely nothing to do with me.

It is my experience growing up with police officers over my sixty years of living, growing up in the south and living in the north, which had direct bearings on my perception, knowledge, and expectation of the police conduct, I was about to experience on the evening of January 28, 2007. I can no more bifurcate my collective experience from the actual moment, than you can my blackness from my person, and some of the actual "racism experienced as a result."

It was only two months prior to the evening of January 28, 2007 that a young black man and his friends were shot up by the police because they thought one of them had a gun. They shot Sean Bell 50 times. It played out in my mind when I observed the officer as he passed my car at or near 21:15. I had no reason to know about his call of a suspicious person somewhere in the area. All I knew

was that I was sitting in my car and I was not involved with anything that was going on around me. I saw the alleged person at or near the corner of Bank and Ocean Avenue. This person entered the parking lot and then it was presumed that this individual, whom I do not know, do not associate with, was coming to my car. For what? As the man was leaving the parking lot the same officer who passed behind my car pulls his cruiser directly behind my car, got out his car, and requested my driver's license. As he is leaving my car a cruiser pulled into the driveway at the right of my car, another to the left, and three more on Bank Street headed towards the police station. My wife came out of the store while all of this was going on, not knowing anything about anything, walking towards the car, opened the door, all I could feel was the bullets coming because one of them might have perceived her movements wrong, thought she had a weapon and opened fire. Based on our historical relationship in the United States with the police you can certainly understand my fear, my thoughts and emotions then.

    From an article in the Hartford Courant Sunday March 15, 2009- "Probing Bias Behind the Budge" Louisiana shooting among four similar cases across the United States. A 73-year-old black man with throat cancer, who could not speak, was having a cookout with family and friends. Two white officers showed up according to the article and within minutes, this man was dead.

    In a mostly white Houston suburb of Bellaire, a 23-year-old black man sitting in his SUV in the driveway of hid parents home was shot and wounded on New Years Eve by police who "mistakenly" believed he had stolen the vehicle.

    I'm sitting in my car and was approached by a white police officer, who had no apparent reason to bother with me, except for the fact that I was black and sitting there.

    Case law I would go back to does not support his actions.

    In Oakland, CA, a transit police officer has been charged with murder in the shooting of an unarmed black man while he was restrained and lying face down on a train platform on January 1, 2009.

    In New Orleans, nine police officers are under investigation after an undercover team stopped his car. He was four struck by 14 bullets.

In New London recently, a young black man died while in police custody after a routine traffic stop.

"All the anecdotal information demonstrates that African Americans are the most frequent victims of zealous and inappropriate police activity that often ends up in a shooting", an attorney for the American Civil Union said.

It was the over zealous and inappropriate behavior of the New London police officers that caused the Fourth and Fourteenth Amendment violation.

*James J. Wright*
104 Ocean Ave.
New London, CT
860-514-8686
or
442 0635

## Certification

I Hereby Certify that the foregoing motion In Limine was delivered At the U.S. District Court on Monday March 30, 09

A copy of The Same will be delivered by Hand To Attorney Patrick Day At 136 Huntington Street New London, Ct.

James J. Wrightler
Plaintiff-Pro-Se.